## Shoofstall *versus* Adams.

1. The Statute of Frauds requires contracts for the sale of land to be in writing, but does not designate a form of contract; hence any note in writing of the contract, signed by the party to be charged, is sufficient, if the other party has accepted it.

2. A receipt for the purchase-money of land will suffice for a contract, if it show the terms of the bargain.

3. An equitable title to land may be surrendered by parol, although it cannot be created or conveyed in that manner.

4. Equitable estates are within the Statute of Frauds.

ERROR to the Court of Common Pleas of *Crawford county*.

This was an action of ejectment by Jacob Shoofstall against Charles Adams, for sixteen acres of land.

On the trial, the title was admitted to have been in John Reynolds on the 8th day of January, 1850, and previous thereto. At this date, Reynolds contracted to sell to Daniel Tingley, 64 acres 58 perches of land, of which this in controversy was a part. The contract between Reynolds and Tingley was in writing, under seal, and executed by both, and was dated the 8th of January, 1850. By the terms of this contract, Tingley was to pay $310.80; viz: $12 at the execution of it, and which was receipted upon it; the balance, in five equal instalments, with interest annually. On the face of the contract was the reservation, "with reserve, that if Charles Adams to whom D. A. Ferris sold the eastern half, shall pay his equal half part of said contract from the beginning, including what he has paid, then he to have separate contract for said eastern half part." This clause was embraced in a parenthesis, in the recital of the land contracted to be sold to Tingley by the contract. On the 1st of May, 1852, Tingley made an endorsment on the contract, in the hands of his vendor, Reynolds, in these words:—

"I agree to release sixteen acres from the east side of within, to J. Reynolds, for the purpose of settling with Chas. M. Adams, and giving the opportunity to him of buying the same from said Reynolds—said Adams to pay for the same at original price, and be allowed what he had paid.

May 1st, 1852.                                    DANIEL TINGLEY."

VOL. II.—14

[Shoofstall *v.* Adams.]

Adams went on to this 64 acres in 1853, previous to which one Ferris had contracted with Reynolds to purchase the land, and pending which, Adams got the possession of the eastern part, by some arrangement with Ferris, but the particulars of which, did not appear on the trial. Ferris failing to pay the purchase money to Reynolds, abandoned his contract, previous to the contract with Tingley, in 1850. In 1853, Tingley having completed his payments to Reynolds, for the portion he retained on the contract, received his deed in satisfaction of his contract. Adams had taken possession without any contract with the owner, Reynolds. Afterwards, however, Reynolds received from Adams, several small sums of money, applied on the contract with Ferris, amounting in all to about $30; but none of this was done until long after Adams got possession. In the summer of 1853, Adams sold his claim to Shoofstall and received payment therefor, and Shoofstall was to pay Reynolds for the land, and take the risk of getting a deed for it. Upon plaintiff's representation to Reynolds that he had purchased defendant's claim, and on paying to Reynolds the purchase-money, amounting to some $75 or $85, Reynolds on the 26th day of September, 1853, conveyed the land in controversy to plaintiff, by deed of that date. The consideration paid to defendant by plaintiff for his claim, was a yoke of oxen, valued at about $65, and some other small sum, settled in account between them.

On the trial, the plaintiff asked the court to charge the jury as follows :—

"1. There is no evidence of title to the land in defendant.

"2. The alleged equity of defendant from Reynolds, was not of such a character as required a transfer thereof to plaintiff, to be reduced to writing.

"3. If the contract between plaintiff and defendant, was fair and honest on part of plaintiff, and the consideration agreed upon paid, the plaintiff is entitled to recover.

"4. If Adams, by the arrangement between him and plaintiff, agreed that plaintiff should pay the purchase money to Reynolds, and obtain the title from him, and in pursuance of that the plaintiff did so, he is entitled to recover.

"5. If there is no fraud by plaintiff in the contract, then he is entitled to the land, unless the purchase-money he has paid is first repaid to him by or for defendant, under any contract."

Defendants presented the following points.

"1. The court is requested to charge the jury, as a matter of law, that the alleged contract of purchase of the land in dispute by the plaintiff from the defendant, is absolutely void *ab initio*, by the Statute of Frauds and Perjuries.

"2. That the plaintiff is not entitled to a conditional verdict

[Shoofstall *v.* Adams.]

under the evidence in this case; that he must abide the effect of his own acts.

"3. That the title acquired, if any, from John Reynolds, enures to the benefit of the defendant; that a party cannot take advantage of his own illegal acts.

"4. That under the evidence in this case, the plaintiff is not entitled to recover, having entirely failed to take his case out of the Statute of Frauds and Perjuries."

To which the court, DERRICKSON, J., charged as follows:—

"1. If the defendant was in possession of the land as early as 1843, improving and cultivating the same, by the consent of Mr. Reynolds, the owner of the legal title, and when the latter afterwards sold to Tingley, reserved this in dispute for defendant, and Tingley subsequently released the same to Mr. Reynolds, and the defendant before and afterwards paid Mr. Reynolds, for the land, and took receipts for the money, there is evidence of title in the defendant.

"2. This point is answered in the negative.

"3. 4. & 5. If there was a parol contract between the parties, and it was free from fraud, still it would not entitle the plaintiff to recover absolutely and unconditionally, as the contract was in violation of the Statute of Frauds and Perjuries. With the evidence before us, as to the manner and mode by which the defendant claimed and had possession of the land, and taking it to be true, in a controversy between him and Mr. Reynolds, he would be entitled to hold it on payment, or tendering the back money."

Under these instructions, a verdict was rendered for plaintiff, to be released on payment of $87.31, in one year, with interest from date.

The charge of the court was assigned for error.

*Church* and *Pettis*, for plaintiff in error.—The defendant had no claim whatever to this land, except the naked possession. He was at the most, but a tenant at the will of Reynolds. The reservation in the article between Reynolds and Tingley was certainly not a contract, but a mere expression of benevolence on the part of Reynolds, that if Adams paid for the eastern half of the 64 acres 58 perches, then he was to have a separate contract for said half. So Tingley agreed by his endorsement, two years later, to release the part in controversy, which was on the eastern side of the whole, to Reynolds, to give Adams the *opportunity* of buying it from Reynolds at the original price, less the sum he had paid. This was all the writing about it. There was then nothing which would pass to or vest in Adams an interest in the land. The whole was ineffectual under the Statute of Frauds and Perjuries, to pass any real estate interest, and

[Shoofstall *v.* Adams.]

therefore he had none. Adams then, having nothing but possession, and faith in the continued benevolence or charity of Reynolds, could by parol sell such a claim. And this brings us to all the legal questions involved in this cause. 3 Watts, 37; 5 Id. 525; 9 Id. 41; 3 Pa. R. 332; 10 W. 204; 7 Barr, 91; 9 Barr, 151; 1 Pars. 94; 1 Har. 21; 2 Id. 260; 5 W. 446; 7 Barr, 16; 2 J. 15. That a written contract for land may be abandoned or discharged by parol, is shown by numerous cases. 9 Vesey, 234, n. *f*, 250, n. 6, 253, n. 7, Summer's ed.; 2 Johns. C. R. 416; 17 Vesey, 363; 2 Id. 299; 1 Id. 404; C. C. 519; 6 Id. 337; 1 Vern. 240; 2 Dick. 469; Sug. Ven. 146, 147, 148, &c.; *Boyer* v. *McCullough*, 3 W. & S. 32, 33.

*Finney* and *Douglass*, for defendant in error, cited *Colt* v. *Seldon*, 5 W. 525; 10 Id. 287; 1 J. 510.

The opinion of the court was delivered at Philadelphia, Jan. 3, 1859, by

STRONG, J.—The argument is, that the defendant's title can only be sustained in violation of the Statute of Frauds. That statute requires contracts for the sale of land to be in writing, but it fails to designate any written form of a contract. Any note in writing, if signed by the parties, or by the party to be charged, if the other has accepted it, is sufficient. 5 Watts, 528; 10 Id. 388. Even a receipt for the purchase-money will suffice, if it show the terms of the bargain. The land in controversy here, was part of a larger tract, which had belonged to John Reynolds. Some time previous to the year 1845, Reynolds contracted to sell the larger tract to D. A. Ferris. While the latter was the owner of the equitable title under his agreement with Reynolds, he sold the eastern half to the defendant. Whether the contract with the defendant was in writing or not, does not appear. However that may be, Adams took possession of the land, and from time to time made payments to Reynolds. On the 12th of June, 1847, he made a payment, the receipt of which Reynolds acknowledged in writing in the following words: "Received of Charles Adams, eleven dollars and fifty-five cents, on account of land contract of D. A. Ferris—a new contract to be made with Adams of one half 'when released by Ferris. (Signed.) John Reynolds." Ferris subsequently surrendered his contract with Reynolds. The equitable title to the land was then in Adams, by virtue of the written receipt. After the surrender, Reynolds contracted by articles of agreement, to sell the whole tract to David Tingley, with a reservation, "that if Charles Adams, to whom D. A. Ferris sold the eastern half, should pay his equal half part of said contract from the beginning, including what he had paid, then he to have a separate

[Shoofstall v. Adams.]

contract for said eastern half part." Upon the back of the articles, Tingley endorsed an agreement at a later day, to release sixteen acres from the east side to John Reynolds, for the purpose of settling with Charles Adams, and giving to him an opportunity of buying the same from said Reynolds, the said Adams to pay for the same at the original price, and to be allowed what he had paid. By this reservation and release, the previously acquired rights of Adams were recognized, though it seems to have been supposed that he might be induced to accept sixteen acres in lieu of the eastern half of the whole tract. About the time of this release, and subsequently, additional payments were made by Adams to Reynolds, who gave receipts for them, acknowledging that they were made on account of the " land contract," and " land debt." The title of the defendant, then, does not rest on parol. There is written evidence of it, sufficient to take it out of the Statute of Frauds, and to enable a chancellor to enforce it. There is, therefore, no just ground to complain of the answer of the court to the plaintiff's first point.

The remaining errors assigned, relate to the instructions which the court gave to the jury, relative to the effect of an alleged purchase by the plaintiff of the defendant's equitable title, before the legal title was conveyed by Reynolds to the plaintiff. They may be considered together. The sum of the instructions was, that the alleged purchase was inoperative because it was not in writing. It is true, that an equitable title to land may be surrendered by parol; though it cannot be created in that manner. A parol agreement may be a sufficient defence to a bill for specific performance, though utterly unavailing as a ground to enforce it. But a parol agreement, upon which the plaintiff relies, was not a surrender by Adams of his equity. A surrender to Shoofstall was impossible, because he was not then the owner of the legal title. The transaction was an attempted purchase, and, being in parol, was consequently ineffectual. Nothing is better settled than that equitable estates are within the Statute of Frauds. *Murphy* v. *Hubert*, 7 Barr, 420. They are even more than legal estates, exposed to the mischiefs which that statute was designed to remedy.

Under the facts of this case, the plaintiff has no reason to complain. He may be thankful that he has been permitted to recover a conditional verdict.

The judgment is affirmed, and the time for the payment of the unpaid purchase-money is extended until the first day of April, 1859.