Sherraden v. Parker

---

SHERRADEN v. PARKER *et al*

Surety: ABANDONMENT OF LEVY. An abandonment of the levy of an execution upon, and a release from thereunder of, personal property of the principal judgment debtor, operates as a discharge of one who is only surety therein, when such abandonment is without his consent, and the fact of his suretyship is known to the execution plaintiff; especially is this so where the property taken under the levy, and afterward abandoned, was held by the surety for his indemnity, and beyond whose legal control it was placed by the levy.

*Appeal from Keokuk District Court.*

MONDAY, JANUARY 27.

INJUNCTION. — The facts, as found by the court below, and which are not controverted, are as follows: October 16, 1858, a judgment was obtained before a justice of the peace against one Warner; plaintiff became surety on the stay bond, and judgment was entered by the justice in due form against the principal and surety, April 21, 1859; a transcript of said judgment was filed in the office of the clerk of the District Court; June 11, 1859, an execution issued on this judgment, but was returned by plaintiff's order, nothing being made thereon. In October, afterward, a second execution issued, and was placed in the hands of the deputy sheriff, who returned that he executed it on the twentieth of that month upon the following per-

sonal property to wit: One two horse wagon, one gold watch, ten acres of corn now standing in the field, etc. The property was offered for sale, but was not sold for want of bidders. It was left in the possession of Warner, the execution defendant, and the levy abandoned. It was not shown that plaintiff in execution had any knowledge of the abandonment, nor that he in any manner consented to it.

Sherraden, the present plaintiff, knew of said levy, of the failure to sell, that the levy was abandoned, and the property left with Warner. He, at the time, had a bill of sale on all the property, except the corn, to secure him against liability on said judgment, but it was not recorded, nor did he agree that the property should be released from the levy. The carriage and watch were taken and sold on another execution. What was done with the other property does not appear. The property levied upon was sufficient to satisfy the judgment. This judgment is otherwise wholly unsatisfied, and on the 21st of September, 1866, an execution issued thereon, which plaintiff now seeks to enjoin.

From these facts the court found that the levy and proceedings of the deputy sheriff under the execution of October, 1859, was not a satisfaction of the judgment, and accordingly dismissed the bill. Plaintiff appeals.

*Mackey & Harned* for the appellants.

*George D. Woodin* for the appellees.

WRIGHT, J. — In our judgment the strength of plaintiff's case is found in the fact that he was the surety of the

SURETY: abandonment of levy.

principal debtor, a fact known to the plaintiff in execution, and the sheriff, and that the abandonment of the levy discharged him from further

liability.  For though we might hold that the levy itself did not operate *prima facie*, or otherwise, to satisfy the judgment, the inquiry would still remain, whether, under the circumstances, plaintiff was not discharged.  While the authorities are not uniform as to the effect of a levy upon personal property in this State, the tendency of the decisions is to hold it until explained a satisfaction. *Lucas* v. *Cassady*, 2 Gr. 209 ; *Reed & Co.* v. *Crosthwait*, 6 Iowa, 219 ; *Mc Williams* v. *Myers*, 10 Id. 325.  Of course it is not meant that the levy is a conclusive satisfaction, but only that as between the parties to it, it *prima facie* has this operation.

Now the circumstances in this case may be such as that between Warner and the plaintiff in execution, the levy would not have the effect claimed.  And though this should be true, we think the present plaintiff is entitled to the relief claimed.

The writ was levied upon the property which he held for his indemnity.  He was known as the surety.  After the officer seized the property it was in the custody of the law, and neither he nor his principal had any right to disturb or interfere with it.  The surety found or knew that the property was about to be subjected to the payment of this debt, the very debt for which he held it as security.  Without his consent, the officer voluntarily released it, abandoned his levy, and permitted it to return to the possession of the defendent in execution.  His knowledge of these facts, in the absence of some showing of fraud on his part, or that plaintiff in execution, or the officer had relied upon his acts or were misled by him, or the like, could not affect his legal rights.  As to him it was the duty of the officer to hold the property, and his voluntary abandonment of it, operated to release the surety, whatever may still be the liability of the principal, or whatever be that of the officer, to the plaintiff in

execution. It is not as though plaintiff had security or other property, as to which his position remained unchanged. For while he may not in equity be heard in such a case, to claim his discharge by reason of such levy upon and abandonment of other property, it is quite different when the officer seizes the very property thus held, and without the consent of the surety voluntarily abandons it. What duty did the law impose upon plaintiff after this levy? What could he do? True, after the failure to sell, and the abandonment, he might have taken the property into his possession, but as between the parties to this controversy, was this his duty? Most clearly it seems to us that it was rather the duty of the plaintiff in execution, or the officer acting for him, to take care of the property. The officer had a right, after the failure, to sell, and it was his duty by law, to take the property into his possession, or take a delivery bond, and to again offer it for sale. So, too, it was his duty to exhaust the property of the principal before proceeding to sell that of the surety, and "surety" as here used, embraces accommodation indorsers, stayers and all others whose liability on the claim is posterior to that of another. Rev. §§ 3258, 3259.

In *Chambers* v. *Cochran* (18 Iowa, 159), cited by appellees' counsel, the levy was upon real property, and it was found that the surety himself was not without fault. And yet in that case this language is used. "Of course it is otherwise where, by some voluntary *act* of the creditor, he surrenders, without the consent of the surety, an actual lien, or withdraws, to the surety's prejudice, an execution, after an actual levy upon the goods of the principal. Then if loss occurs, it will fall on the creditor not on the surety."

In view of the peculiar relation in which the surety stands to the principal and creditor, the doctrine must be,

that the surety may claim his release when the creditor surrenders any hold or waives any lien, which would have resulted in the discharge of the debt. Thus in *Kuhive* v. *Westmoreland Bank* (2 Watts, 136), it is held, that if a levy be withdrawn, or other security abandoned, to the injury of the surety, and without his consent, he will have an undoubted right to protection. And see also *Commonwealth* v. *Miller*, 8 Serg. & R. 452, where there was a withdrawal of a levy on the goods of the principal, in consequence of which they were seized and sold under another writ, and the surety was held entitled to reduce the demand to the extent of what might have been made if the execution had been pushed to a sale. See also *Commonwealth* v. *Hass*, 16 Id. 252; *Holt* v. *Body*, 6 Harris, 207 (a case of joint debtors); *Dixon* v. *Ewing*, 3 How. 280 (based upon the relation of the parties and not upon the ground that the levy satisfies the writ). And *Sneed* v. *White* (3 J. J. M. 525), where it is held that a stay of execution by the debtor, after levy upon the property of the principal, will exonerate the surety, if the lien resulting from the levy be extinguished, and the surety did not approve of the indulgence. "Whatever doubt may exist as to the reason, there can be none as to the result; and all the authorities agree that the discharge of the surety will necessarily follow from the abandonment of an execution which has once been laid on the goods of the principal." 2 Am. Lead. Cas. 344, and the numerous cases, English and American, there cited.

Reversed and remanded, with directions to make the injunction perpetual.