# Smith & Fleek's Appeal.

1. Cutting down timber to the injury of the inheritance, being waste may be restrained in equity.

2. Smith by a paper signed only by him, agreed to sell to Raydure "all that piece of land sold by Rose to Smith, Raydure is to have the refusal ten days from date." Raydure gave *verbal* notice that he would take the land. *Held,* that the contract was not within the Statute of Frauds, and specific performance could be enforced.

3. It is sufficient that a contract be signed by the vendor, and it is not necessary that notice of election to take should be in writing.

4. The option did not render the contract devoid of mutuality, so as to prevent a decree for specific execution.

5. The description of the subject of the contract was sufficiently certain, it might be applied to the land by parol evidence.

[Smith & Fleek's Appeal.]

6. Time was of essence of the contract as related to the option, but not as to the performance.

7. The land was held by Smith under articles with Rose; Smith agreed that the deed should be made directly to Raydure, on paying the purchase-money due Rose. Rose so made the deed, Smith could be restrained from cutting timber on the land.

8. Under a bill by Raydure to restrain cutting timber, the court might award an issue to ascertain the facts.'

October 20th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Court of Common Pleas of *Crawford county :* In Equity : No. 169, to October and November Term 1870.

The bill in this case was filed July 14th 1868, by Stafford Raydure, D. C. Raydure and W. S. Raydure, against Thomas F. Smith and Porter Fleek. The plaintiffs averred—

2 and 3. They entered into the following contract with the defendants :—

"Little Cooley, May 6th 1868.

"For and in consideration of Five Dollars, lawful money, paid this day, we agree to sell to S. Raydure and Sons, the Rose pine tract of land for the sum of Six Thousand Dollars, viz. : Four thousand to be paid at the time deed is made to said Raydure, and Two thousand in one year. Said land is all that piece bought of Rose by Thomas Smith and Porter Fleek.

"Said Raydure is to have the refusal ten days from date.
                                             "PORTER FLEEK,
                                             "THOMAS F. SMITH."

4, 5 and 6. The plaintiffs on the 12th of May informed the defendants of their intention to take the land on the terms of the contract; the defendants informed the plaintiffs that they would meet the plaintiffs at the office of Mr. Rose, Meadville, on the 18th of May, and receive the purchase-money under the articles, and on the 6th and 12th of May, agreed that Rose should make the deed directly to the plaintiffs, Rose to receive from the plaintiffs what should be due him by the defendants.

7 and 8. The plaintiffs on 18th were at Meadville, the defendants not being present, and paid the balance due him from defendants to Rose, who executed to the plaintiffs a deed for the land, paid the balance of the $4000 into the bank at Meadville, forwarded a certificate of deposit to the defendants, and also a bond for the unpaid $2000.

9, 10 and 11. The plaintiffs took possession of the land and began to cut timber, about a week afterwards the defendants interfered with the plaintiffs; they and defendants made complaints against each other for unlawfully cutting timber; both complaints being then pending in the Quarter Sessions.

[Smith & Fleek's Appeal.]

12. The defendants were still cutting timber on the premises, in violation of plaintiffs' rights. The prayers were that the defendants might be restrained from entering on the premises, interfering with the timber or cutting and removing it, and for general relief. Attached to the bill as an exhibit, was a notice dated May 18th 1868, from plaintiffs to defendants, saying that up to 3 o'clock of that day, they had waited for the defendants at Meadville; that they had paid to Mr. Rose the money due to him and received his deed, had deposited the balance due defendants in the Meadville Bank, and enclosed in their letter a bond for $2000.

The defendants demurred to the bill, because it did not exhibit a case entitling the plaintiffs to relief; the subject was not within the jurisdiction of a court of equity; the agreement of May 6th having been varied by parol was within the Statute of Frauds, plaintiffs derived no title to the land; and the plaintiffs had a complete remedy at law.

The court (Johnson, P. J.) overruled the demurrer and granted a preliminary injunction.

The defendants then filed an answer; in which they averred that the plaintiffs did not on the 12th of May 1868, " signify in writing" their intention to take the land, but that one of them informed the defendants on that day, that they would take the land, and notified the defendants to come to Meadville on the 18th of May, and they would make arrangments about the land; they denied that they told the plaintiffs that they would meet them and Mr. Rose in Meadville, on the 18th of May, and receive pay for the land; or that they agreed that Mr. Rose should make the deed to the plaintiffs, or that they should pay to Mr. Rose the balance due to him; that in accordance with a previous arrangement, Fleek, one of the defendants, came to Meadville, and at 11 o'clock on that day gave to the cashier of the Meadville Bank a notice to be given to the plaintiffs, that the time for their acceptance of the land had expired on the 16th May, and that the defendants were " discharged from any arrangement concerning the sale of the said land in consequence of non-compliance " by the plaintiffs; and (in their belief) that the plaintiffs received the notice at $2\frac{1}{2}$ o'clock P. M. of that day; that the letter of plaintiffs enclosing the certificate of deposit and the bond, reached defendants' post-office, a day or two afterwards, and that Smith, one of defendants, refused to receive it from the postmaster and the letter with its enclosures was returned to the plaintiffs; they denied the right of Rose to receive balance of the purchase-money from the plaintiffs, he having received no order from the defendants to do so; and the balance not being due until June 18th; they averred that the agreement between them and the plaintiffs was that unless the purchase-money should be paid before

[Smith & Fleek's Appeal.]

ten days from May 6th, the agreement of that date was to be null and void.

An examiner was appointed, who heard testimony, and on the coming in of his report the case was heard on bill, answer and testimony.

After the hearing the court directed an issue to ascertain the facts in the following questions :—

1. Whether the defendants agreed with the plaintiffs on the 12th of May 1868, to meet them at Meadville on the 18th to receive payment on the contract and otherwise consummate it ?

2. Whether either on the 6th or 12th of May, the defendants agreed that the plaintiffs might pay Rose the balance due him, and that the deed should be made from Rose directly to the plaintiffs ?

3. Whether the plaintiffs have performed their part of the contract or tendered performance ?

On the trial of the issue the finding was for the plaintiffs on all the points.

The court then decreed that the preliminary injunction should be made perpetual, and that " the defendants be restrained from cutting and removing any timber upon and from the premises described in the plaintiff's bill, or in any way interfering with their possession."

The defendants appealed to the Supreme Court.

They assigned for error :—

1. Overruling the demurrer and awarding a preliminary injunction.

2. Directing the issue.

3. Making the injunction perpetual.

*T. R. Kennedy* and *D. Derrickson* (with whom was *W. R. Bole*), for appellants.—There must be a clear necessity in the light of inability to compensate, to authorize an injunction: N. Boston Coal Co. *v.* Pottsville Water Co., 4 P. F. Smith 164 ; Mammoth Vein Coal Co.'s Appeal, Id. 183.   The right of plaintiffs must be admitted or established at law before granting an injunction: Rhea *v.* Forsyth, 1 Wright 503 ; White *v.* Booth, 7 Vermont 171 ; Shields *v.* Arndt, 3 Green's Ch. 234 ; Caldwell *v.* Knott, 10 Yerg. 209 ; Hart *v.* Albany, 3 Paige 313 ; Reid *v.* Gifford, 6 Johns. Ch. Rep. 19 ; Biddle *v.* Ash, 2 Ash. 211 ; N. Penna. Coal Co. *v.* Snowden, 6 Wright 488.   An injunction to stay waste will not be granted against one in possession claiming by adverse title: Lansing *v.* North, 7 Johns. Ch. 164 ; Smith *v.* Collyer, 8 Vesey 89 ; Pillsworth *v.* Hopton, 6 Id. 51 ; Stone *v.* Mann, 4 Johns. Ch. 21 ; Bogey *v.* Shute, 4 Johns. Eq. 174 ; Stewart *v.* Chew, 3 Bland 440.   The contract here being optional, specific performance will not be decreed: Parkhurst *v.* Van Cortland, 1 Johns. Ch. Rep.

[Smith & Fleek's Appeal.]

281; Wilson v. Clarke, 1 W. & S. 554; Bodine v. Glading, 5 Harris 53. The contract, if not wholly in writing, is within the Statute of Frauds; here the contract was altered by parol: Soles v. Hickman, 8 Harris 180; Parkhurst v. Van Cortland, 1 Johns. Ch. R. 173; Seitzinger v. Ridgway, 4 W. & S. 472; Parrish v. Koons, 1 Pars. 79; Patton v. Develin, 2 Philada. Rep. 123; Holland v. Eyer, 2 Simons & Stuart 194. A contract may be defeated for fraud or mistake, but cannot, after varying it by parol, have a decree for specific performance: Jordan v. Sawkins, 3 Bro. 388, Rich v. Jackson, 4 Id. 514; Clinan v. Cook, 1 Schoales & Lefroy 92; Woollam v. Hearn, 7 Ves. 211; Higginson v. Clowes, 15 Id. 516; Dwight v. Pomeroy, 17 Mass. 303; Osborn v. Phelps, 19 Conn. 63; Att'y-Gen. v. Sitwell, 1 Younge & Coll. 559. When writing is necessary, the contract cannot be varied by parol; Espy v. Anderson, 2 Harris 308; Cravener v. Bowser, 4 Barr 259.

*S. N. Pettis* (with whom was *M. P. Davis*), for appellee.—— Equity had jurisdiction: Act of June 13th 1836, § 13, Pamph. L. 789, Purd. 401, pl. 3; Hunter's Appeal, 4 Wright 194; Bancord v. Kuhn, 12 Casey 383; Denny v. Brunson, 5 Id. 382; Brightly's Eq. § 2, 82; Stockdale v. Ullery, 1 Wright 487; Wesley Church v. Moore, 10 Barr 273; Kirkpatrick v. McDonald, 1 Jones 387; Yard v. Patton, 1 Harris 272; Lyon's Appeal, 11 P. F. Smith 5; Big Mountain Imp. Co.'s Appeal, 4 P. F. Smith 361. The court could direct the issue: Baker v. Williamson, 2 Barr 116; Dale v. Roosevelt, 6 Johns. Ch. 257; McCallum v. Germantown Water Co., 4 P. F. Smith 40; Ward v. Hill, 4 Gray 595; Tappan v. Evans, 11 N. H. 311; Black v. Lamb, 1 Beasley (N. J.), Ch. 113; Bassel v. Johnson, 2 Green Ch. R. 417; 2 Daniels' Ch. P. 1086. The deed of the land was properly made by Rose to the Raydures: Myers v. Myers, 1 Casey 100. Actual occupancy was not necessary to perfect Raydure's title, for it was uncultivated land: Harlan v. Harlan, 3 Harris 507; Wright v. Guier, 9 Watts 172; Elliott v. Powell, 10 Id. 453; Dech's Appeal, 7 P. F. Smith 467; Hilliard on Injunction 294; Livingston v. Penn. Iron Co., 9 Wendell 511. As to jurisdiction they cited 3 Daniels' Ch. Pr. 186, 188, 189, 2 Eden on Injunction 215, 216; Willard's Eq. 369. The court will enjoin removal of the timber: Hilliard on Injunction 290; Clark's Appeal, 12 P. F. Smith 447. The contract giving an option of ten days, the plaintiffs were bound when they gave notice of their election: Corson v. Mulvany, 13 Wright 88. A contract is sustained although not signed by the vendee if he accepts: Tallmann v. Franklin, 5 Kernan 584; Pickey v. Hagadon, 1 Duer 89. As to Statute of Frauds in relation to the writing being signed but by vendor: Lowry v. Mehaffy, 10 Watts 387: 1 Sugden on Vendors 84, 85, 87; Owen v. Davis, 1 Ves. Sr. 82; Coleman v. Upcot, 5 Viner Ab. 527; Coles v. Trecothick, 9 Ves. 234; Blagden

v. Bradbear, 12 Id. 466 ; Buckhouse v. Crosby, 2 Eq. Cases Ab. 32, 44 ; Shofstal v. Adams, 2 Grant 212 ; Simpson v. Breckenridge, 8 Casey 287. In relation to description of land : Ferguson v. Staver, 9 Casey 411. The time of performance can be enlarged by parol : Erwin v. Saunders, 1 Cowan 250 ; Dearborn v. Cross, 7 Id. 49 ; Davis v. Talcott, 14 Barb. 611 ; Flynn v. McKean, 6 Duer 203. The contract may be varied by parol : Brown on Frauds, §§ 422, 423 ; 1 Greenl. Ey. §§ 304, 424, 425 ; Adams's Eq., § 88, p. 252 ; Myers v. Myers, 1 Casey 100. " Though a contract for lands be verbal, yet if fair, and the price paid and the vendee has received the title from a third person in whom it vested, chancery will not interfere to relieve a vendor :" Fletcher v. Fortunatus, 2 A. K. Marshall 546.

An incomplete written contract may be completed by parol : Musselman v. Stoner, 7 Casey 270.

The opinion of the Court was delivered, January 9th 1872, by WILLIAMS, J.—This was a bill for an injunction to restrain the defendants from cutting timber on a tract of land which they had sold the plaintiffs. The bill alleged that the land had been conveyed to them by the holder of the legal title, in pursuance of the contract of sale, and that they had taken possession of it prior to the commission of the acts complained of. Upon the filing of the bill, the court awarded a preliminary injunction, which was made perpetual on final hearing. The defendants have appealed from the decree, and ask its reversal on two grounds :—

1st. That the complainants' case is not within the equitable jurisdiction of the court, but their remedy, if any, is by an action at law.

2d. That the contract under which they claim title is within the Statute of Frauds, and equity will not enforce its specific execution.

These questions will be considered in their order. Is, then, the plaintiffs' cause of complaint within the equitable jurisdiction of the court ? Cutting down timber to the prejudice of the inheritance is undoubtedly waste, and may be restrained under the equity power conferred on the courts, by the Acts of the 16th June 1836, and 14th February 1857, for the " prevention or restraint of the commission or continuance of acts contrary to law and prejudicial to the interests of the community or the rights of individuals." It was so decided in Denny v. Brunson, 5 Casey 382, where the lessee of a tenant at will, upon a bill filed by the owner, was restrained by injunction from cutting down timber and ornamental trees to the prejudice of the owner's reversionary interest. It cannot be doubted that the complainants' case is within the chancery jurisdiction of the court if they had such right or title to the land as would enable them to invoke its exercise for the

prevention of the acts complained of. Whether they had such title, or not, is the main question presented by the record. If the contract, on which their title depends, is within the Statute of Frauds, they had no right to the remedy invoked, and' their bill should have been dismissed. But if the contract is not within the statute, and equity would enforce its specific execution, they were clearly entitled to the injunction prayed for. The defendants insist that the contract is within the statute, because it was not signed by the plaintiffs, and because the notice of their election to take the land, under the option contained in the contract, was not given in writing. But the statute, while it requires the contract to be in writing, does not require it to be signed by both parties. It is sufficient if it be signed by the vendor—the party to be charged—if the vendee has accepted it: Lowry v. Mehaffy, 10 Watts 387; McFarson's Appeal, 1 Jones 503; Shofstall v. Adams, 2 Grant 209; Simpson v. Breckenridge, 8 Casey 287. Nor was it necessary that notice of the plaintiffs' election to take the land, under the option given in the contract, should be in writing. By the express terms of the contract the defendants agreed to sell the land to the plaintiffs for $6000, the plaintiffs " to have the refusal ten days from date." It is by no means certain that the contract would not have been binding on the defendants if the plaintiffs had given no notice whatever of their election to take the land in accordance with its terms. If it would have been binding on the plaintiffs if they had remained silent, and had given no notice of their refusal, why should it not be binding on the defendants? But whether binding on them without notice of the plaintiffs' election or not, there is nothing in the terms of the contract or the provisions of the statute which requires that the notice should be in writing. The verbal notice given by the plaintiffs was sufficient, and their election to take the land, like the happening of any other contingency on which performance of the agreement rests, rendered the contract as absolute and binding as if no option had been given to the plaintiffs. Nor is it so devoid of mutuality, on account of the option, as to prevent a court of equity from decreeing its specific execution. This question is so satisfactorily discussed in Corson v. Mulvany, 13 Wright 88, where the agreement for the purchase of the land was at the option of the vendee, that we need do no more than refer to the opinion without repeating or attempting to supplement the argument. Equally unfounded is the objection that the contract is incomplete in its terms. It sets out the parties and the consideration, and sufficiently describes the subject-matter— " said land is all that piece bought of Rose by Thomas Smith and Porter Fleek"—*certum est quod certum reddi potest*. If the subject of the contract is described, parol evidence is admissible to apply the description to the land: Ferguson v. Staver, 9 Casey

[Smith & Fleek's Appeal.]

411. But it is further objected that the plaintiffs are not entitled to specific execution of the contract, because they did not tender performance within the time limited by the agreement. It is a sufficient answer to the objection that by the terms of the contract no time is fixed for its performance. The agreement provides that four thousand dollars of the purchase-money shall be paid at the time the deed is made, and two thousand in one year. But no time is fixed for the making of the deed, and therefore the law implies that it was to be made within a reasonable time. Can there be a doubt that if the defendants had tendered the plaintiffs a deed within a reasonable time after notice of their election, they would have been bound to accept it, and pay the purchase-money in accordance with the terms of the agreement, though more than ten days had elapsed from its date? If so, is it not equally clear that they would have been bound to make the plaintiffs a deed on tender of performance of the contract on their part? It is evident that time was not intended to be of the essence of the contract as respects its performance; it is only material as it respects the option given for its refusal, and, therefore, the plaintiffs were not bound to perform, or offer to perform it within ten days after its date, on pain of its forfeiture. Nor was tender of performance absolutely essential to the maintenance of a bill for the specific execution of the agreement by the defendants. It would be sufficient to aver the plaintiffs' willingness and readiness to perform. It is clear that the plaintiffs would be entitled to a decree for the specific execution of the contract, if they had not obtained the legal title from Rose, and if they had filed a bill for the purpose, the court would have awarded an injunction, *pendente lite*, restraining the defendants from cutting timber or committing other acts of waste to the prejudice of the estate, and made it perpetual on final hearing. But even if the parties were bound to perform the contract within ten days from its date it was competent for them to extend the time by a verbal agreement, and to fix such subsequent time for its performance as might suit their convenience. If then "the defendants did agree with the plaintiffs, on the 12th of May 1868, to meet them in Meadville on the 18th of the same month, to receive payment on their contract with the plaintiffs, dated May 6th 1868, and otherwise consummate the trade specified in said contract; and did agree that the plaintiffs might pay to Peter Rose whatever balance was due from the defendants to him for the land in question, and that a deed should then be made directly by the said Rose to the plaintiffs for the land, and if the plaintiffs have performed or tendered performance of the contract and agreement between the parties," as shown by the evidence, and as the jury have found, then the plaintiffs under their deed from Rose, have not only the legal title to the land, but the equitable title of the

19 P. F. Smith—31

defendants. Having then the whole title to the land, and having taken possession of it under their contract with the defendants, the plaintiffs were entitled to maintain their bill for an injunction to restrain the defendants from committing the acts of waste complained of.

Nor have the defendants any reason to complain that the court, instead of dismissing the plaintiffs' bill and compelling them to bring ejectment, awarded an issue for the trial of the facts in dispute between the parties. Substantially the same questions were submitted to the finding of the jury in the issue directed by the court as would have arisen on the trial of the ejectment. The burden of proof was on the plaintiffs, and the defendants were deprived of no right or advantage that they would have had in the trial of an ejectment. It is not alleged that the court committed any error in its rulings in the trial of the issue, or that the verdict of the jury is against the evidence. If, then, the plaintiffs have both the legal and equitable title to the land, under the facts found by the jury, why should not the decree restraining the defendants from cutting and removing the timber thereon be allowed to stand?

Decree affirmed at the costs of the appellants.