## William A. Witman and John A. Witman, Appellants, *v.* The City of Reading.

*Statute of frauds—Writing not under seal.*

The statute of frauds is satisfied by a note in writing not under seal, stating the terms of the lease and designating the land, signed by the party called on to fulfil it, and accepted by the other party.

*Statute of frauds—Delivery of writing.*

An actual, manual transfer of the instrument in writing required by the statute of frauds is not in all cases necessary.   If the grantee, by formal assent, or unequivocal acts, such as entering into possession, treats the writing as in his possession, it is sufficient.

*Statute of frauds—Memorandum in writing—Landlord and tenant—Extension of term—Eminent domain.*

Where a lessor indorses on the original lease in his possession an extension of the lease, and signs the same without sealing it, and it is the intention of both lessor and lessee that the indorsement shall operate as delivery, and that no further paper will be executed, and the lessee relying upon the extension thus obtained makes valuable improvements upon the premises, he has such an interest in the property as is subject to injury and damage by public improvements constructed by the city in which the property is situated.

*Eminent domain—Condemnation of property for boulevard—Damages—Right to damages—Tenant.*

Where a city, two or three months after a tenant has obtained an extension of his lease for a term of years, surveys a boulevard through the land, and subsequently, and after the tenant has expended a considerable sum in a contemplated improvement, an ordinance is passed adopting the boulevard as surveyed, the tenant is entitled to damages for the compulsory stoppage of his improvement, although he may have, after the date of the ordinance, relet the premises to another party. In such a case the fact of reletting the premises may be important as one mitigating damages, but it does not bar the tenant from asserting a claim for damages. Shaaber v. City of Reading, 150 Pa. 402, distinguished.

Argued Feb. 27, 1899. Appeal, No. 68, Jan. T., 1899, by plaintiffs, from judgment of C. P. Berks Co., Feb. T., 1898, No. 34, on verdict for defendant. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Appeal from report of viewers. Before ENDLICH, J.

The court charged as follows:

Under the view which the court has taken of the numerous questions of law that have arisen in this case, and which view, of course, is binding upon the jury, the plaintiffs have shown no right to recover from the city of Reading in this action. It is therefore the duty of the court to say to the jury that it is their business to render a verdict for the city. In doing so, the jury will be relieved of all responsibility; the responsibility rests entirely with the court, and if there has been any error committed that error can be rectified in due course. You will therefore return a verdict in favor of the city.

Verdict and judgment for defendant. Plaintiffs appealed.

*Error assigned* among others was the charge of the court.

*Cyrus G. Derr*, with him *Kenry D. Green* and *Herbert R. Green*, for appellants.—The memorandum indorsed on the original lease, signed by the lessor, and declaring that the lease "was extended from October 1, 1895, to October 1, 1900," assented to and accepted by the lessee, was a sufficient writing to take the case out of the operation of the statute of frauds and perjuries: McFarson's App., 11 Pa. 503; Johnston v. Cowan, 59 Pa. 275,

Smith & Fleek's App., 69 Pa. 474; Ruckman v. Ruckman, 32 N. J. Eq. Rep. 260.

If the contract of lease had been one resting purely in parol, only the lessor could plead the statute of frauds, the said statute having been made solely for his protection, and he not only not pleading it but acknowledging under oath upon the witness-stand the existence, and asserting the binding force, of the contract. The defendant cannot plead the statute for him: Houser v. Lamont, 55 Pa. 317; Lloyd's App., 82 Pa. 485.

The marking of the route of the boulevard with construction stakes, the making of a survey and map thereof, the adoption of the same by ordinance of city councils approved by the mayor, the ordinance authorizing the commissioners to " enter upon, take, use and appropriate " the lands embraced in the map and survey, constituted in legal contemplation a taking of the plaintiff's leasehold, which became complete at the time of the approval of the ordinance, viz: April 2, 1896, though actual construction was not begun until September following: Wadhams v. Lackawanna & Bloomsburg Railroad Co., 42 Pa. 310; Beale v. Pennsylvania Railroad, 86 Pa. 511; Pittsburg, etc., Ry. Co. v. Com., 101 Pa. 196; Davis v. Titusville, etc., Ry., 114 Pa. 314; O'Brien v. Railroad Co., 119 Pa. 190; Pennsylvania S. V. R. R. v. Ziemer, 124 Pa. 570.

The jury should have been instructed to take into account, not only the remainder of the plaintiffs' leasehold interest to October 1, 1900, but the probability, if they should find such probability to have existed, of a renewal or extension of the said lease: Phila. & Reading R. R. Co. v. Getz, 113 Pa. 214; Baltimore v. Rice, 21 Atl. Rep. 181.

*William J. Rourke*, city solicitor, with him *George F. Baer*, for appellee.—A parol lease of land for a term of more than three years is, under the statute of frauds, but a lease at will. A ratification of a parol lease of land for a term of more than three years, to avoid the effect of the statute of frauds, must be signified by writing. The ratification cannot be made by the original lessor after he has conveyed his title to another: Moore v. Small, 19 Pa. 461; Woods v. Farmare, 10 Watts, 195; Blakeslee v. Blakeslee, 22 Pa. 237.

The survey and the staking out of a line, returning a map

thereof to the officers of the company, the preliminary entry by engineers and surveyors who run and mark out lines, map them, and report them to the company, does not constitute a location. It is only after the board of directors has adopted the line and condemned the property that the location becomes valid against third persons and rival corporations : Pittsburg, etc., Ry. Co. v. R. R. Co., 159 Pa. 331; Williamsport & N. B. R. R. Co. v. Phila. & Erie R. R. Co., 141 Pa. 407.

In Rex v. Liverpool & Manchester Ry. Co., 4 A. & E. 650 (31 Eng. Com. Law Reps. 164), it was held that damages cannot be recovered by a tenant at will because the lessee is only entitled to damages for the term of the lease, and the expectation of a renewal of a lease is not such right of property as will entitle a lessee to compensation: In re Stroud, 8 Manning, Granger & Scott, 502 (65 Eng. Com. Law Reps. 500).

OPINION BY MR. JUSTICE DEAN, April 24, 1899 :

The Witmans, plaintiffs, owned ten acres of land on Mount Penn; on this was a valuable stone quarry, which they operated, shipping the stone to market over an inclined railway built on the land of De B. Randolph Keim. The land necessary for the construction of the railway, a strip about ten feet wide, was leased to plaintiffs by Keim for a term of two years from October 1, 1891, and then, by a written memorandum, extended for a further term of two years, to October 1, 1895. In the summer of the year 1895, William A. Witman told Keim they wanted to put up a crusher and machinery to turn the waste of the quarry into merchantable sand, and that unless an extension of the lease was had the expenditure of the money for the improvements would not be warranted; Keim assented to an extension for five years, and said that if a proper writing was drawn up he would sign it, and immediately indorsed this memorandum on the original lease then in his possession: " This lease upon agreement with and at request of William A. Witman was extended from October 1, 1895, to October 1, 1900, or five years, to accommodate him, on the same terms as the original lease of September, 1891, in the erection of a stone and sand crusher, then being erected. De B. Randolph Keim."

Not long afterwards, Witman spoke to Keim about drawing

a formal lease, and Keim answered, " It don't matter, I indorsed it on the other lease the same as before." Witman assented, and immediately proceeded to expend about $1,500 in the construction of a crusher and machinery. In December, 1895, the park commissioners of the city of Reading laid out a new street called a boulevard, which crossed Witman's railway at two points, and on January 18 following the route so laid out was submitted to councils, with the request that an ordinance be passed authorizing the park commissioners to appropriate the land marked out for the boulevard. Councils, thereupon, regularly adopted the proposed ordinance. The Witmans, as they alleged, being financially unable to adapt their railway to a crossing of the proposed boulevard, leased their property, reserving the crusher, engine and boilers, to one Tobias, for the term of ten years, with the verbal assent of Keim. The boulevard was actually constructed in 1896, and thereby cut off transportation of stone on the inclined railway, and to a considerable extent rendered valueless plaintiff's improvements. Tobias, also, abandoned his lease, and refused to pay rents. The Witmans, on January 18, 1898, under the act of June 28, 1895, and its supplement of July 15, 1897, petitioned the court for the appointment of viewers to assess the damages sustained by them by reason of the construction of the boulevard. Viewers were appointed, who went upon the premises, assessed damages and reported their award to the court, which confirmed the report nisi; thereupon the petitioners appealed to the common pleas. In that court this issue was framed, and it came to trial before the court and jury. The learned judge who tried the cause was of opinion, that in law plaintiffs had made out no case, and directed a verdict for defendant. We now have this appeal by plaintiffs, who assign twelve errors, most of them being to the rejection of evidence tending to show the extent of the appropriation and injury to their property. As these rulings depend in great degree for their correctness on two main questions decided against plaintiffs by the court, it is best to consider these questions first.

The court was of opinion, first, that plaintiffs, neither in their evidence admitted, nor in that rejected, assuming the allegations in the offers of the latter to be true, had shown a taking by the city of property owned by them, and therefore their claim for

damages was without foundation. Undisputedly, the city, in some degree, had taken, injured or destroyed the inclined railway on which plaintiffs transported their stone; if they are to be regarded as mere intruders on Keim's land, no property right was vested in them, which the city disturbed, and there was no taking of private property for public use, or act of injury to it within the meaning of the constitution; nor was there any one, within the true intent and meaning of the second section of the act of 1897, to whom damages were payable. This brings us to the question, whether the evidence established, within the statute of frauds, a right in plaintiffs to maintain their railway on that land. Their right under the first lease, of October 1, 1891, for two years, it seems to us, was undoubted. We do not regard the reservations in favor of the lessor, to wit: the right to have a street opened across the line of the railway, if he so desired; or the right to cancel it on three months' written notice; or the privilege to deposit stone on the land of lessor at the terminus, with the right in the lessor to revoke such privilege at will, as in the least degree affecting the legal ownership of the property. Such reservations might tend to depreciate the value of the property under the lease, but the right of property in the lessee, until Keim, under one or other of the reservations, asserted his legal demand, remained unaffected. If, then, the original lease vested in plaintiffs a property right in the land appropriated, and the railway injured it by the construction of the boulevard, was that right or ownership lost by the failure to have executed formal renewals or extensions of it? The extensions were mere indorsements on the original, signed by the lessor, but not under seal, and no duplicate or other evidence of the extension was delivered in writing to the lessees. Waiving the question as to the right of third parties to plead the statute of frauds against the claim of the lessees, we choose to discuss the question as if the city could take the place of Keim, the lessor, and assert his legal rights under the statute. It may be admitted, that at the time the second indorsement was made the parties themselves contemplated the execution in the future of a more formal writing; this was not done; why appears from the testimony; when Keim was called upon by the Witmans for a formal lease and asked, "How about drawing up that lease?" he replied, "It don't matter; I indorsed it on the

other lease the same as before." This was, manifestly, an understanding on the part of both, that the written indorsement on the original in the possession of Keim should stand as their contract with reference to the land. Was it sufficient under the statute? It was in writing, and expressly stated the terms of the lease were those of the original on which it was indorsed. It was signed by the owner of the land; was accepted by the other party to it, not only by what he said, but by the most significant of acts, a large expenditure of money in improvements. It was not, however, under seal. We held, in McFarson's Appeal, 11 Pa. 503, that "The statute of frauds is satisfied by a note in writing not under seal, signed by the party called on to fulfill it, if the other accepted it." Then, in Tripp v. Bishop, 56 Pa. 424, we held: "It is then only the lessor or grantor who is required to sign the agreement. His contract must be in writing, and signed by him, but the statute requires no written evidence of the engagement of a lessee or grantee. The statute was passed for the protection of land-owners." To the same effect are Johnson v. Cowan, 59 Pa. 280, and Smith and Fleeck's Appeal, 69 Pa. 474. Nor was physical delivery of the writing to the lessees necessary under the circumstances here shown; true, to complete an absolute conveyance by deed, delivery is held to be necessary, but even at common law, it is not in all cases necessary to show actual, manual transfer of the instrument; if the grantee, by formal assent or unequivocal acts, such as entering into possession, treats a deed as in his possession, it is sufficient. It must only, clearly appear, that what was done was intended by grantor and grantee as a delivery. Here, in the statute, there is nothing requiring actual delivery of the writing to the lessee, and, even if there were, the manifest intention of both parties was, that the indorsement on the original lease in possession of the grantor should operate as a delivery. Further than this, if even Keim himself had pleaded the statute, equity would have held such plea unavailing; for, treating it as resting only in parol, it could not be questioned that thereby the Witmans, on the faith of it, with the assent of Keim, retained possession and expended a large amount of money in improvements. It would have been a fraud in the lessor, in view of these facts, to have set up the statute against his lessees. We are of the opinion that the owner, by a writing

signed by him, parted with the possession of the land for a term of five years from October 1, 1895; further, that the purpose of the extension being to enlarge the term so as to warrant the lessee in erecting costly improvements, the lessor could not, after encouraging the expenditure of a large sum of money in the erection of improvements, have, in equity, revoked the lease arbitrarily. The lessees, therefore, had such interest in the property as was subject to injury and damage by the public improvement constructed by the city. The court below treats the written indorsement for the extension as but a memorandum for the information of the lessor. We do not concur in this interpretation of the statements of Witman and Keim; we concede that they were not altogether consistent with each other, and that, possibly, Keim's is to some extent inconsistent with itself. But, taking the evidence of both, in view of the surroundings, a reasonable interpretation is, that at the request of Witman the indorsement was made to bind both, each intending, that a substitute should, in the future, be drawn and executed, more elaborate in its provisions; and this intention as to the substitute was neglected. The indorsement, however, accomplished the very purpose of both; Keim intended to bind himself by a written agreement to extend; the Witmans requested and assented to the extension, and at once acted upon it, because they considered they were in no peril of the loss of their improvements. The failure to substitute a second writing left the parties to their obligations under the first. The next writing, dated months afterwards, was executed, according to Witman's testimony, not because he had not already a written extension, but to show to the law committee of councils that he had an undisputed right, in addition to his disputed one, resting on the indorsement. But, whether we be correct or not in our interpretation of the oral evidence, and assuming that the interpretation put upon it by the court below is a reasonable one, still, the oral evidence, what the parties said, and what they meant by what they said, so far as such evidence is material, is for the jury. and must be submitted to them.

As to the second reason for a peremptory direction to find for defendant, to wit: that plaintiffs had assigned their term to Tobias, and their claim at most could not be for more than nominal damages, we do not think it can be sustained. Shaaber v.

City of Reading, 150 Pa. 402, is in the main relied on as sustaining this ruling. But the facts in that case were altogether different from this; there the term had absolutely ended by the contract and notice from the lessor; the damages alleged, resulted from the removal of buildings on a street laid out and established by the city ten years before the date of claimant's lease, which facts brought him directly within the terms of the act of April 26, 1864. This act, by its provisions, protected the municipality from claims for damages resulting from destruction or removal of buildings erected after location of the street. There was no expectation of renewal of the lease, for the owner had signified by the unmistakable notice his determination not to renew. But, in the case before us, the city surveyed off the land for the boulevard in December, 1895, two or three months after plaintiffs had obtained an extension of the lease for five years from October 1, 1895; the route and extent of appropriation were marked by construction stakes; in January, 1896, the commissioners, by resolution, adopted the route so staked out, and councils, by ordinance, confirmed their action; at this time, plaintiffs had already expended on their contemplated improvement, $1,500; to complete it required the expenditure of $500 more. In the face of the act of 1864 it would have been the sheerest folly to have gone on and completed it. Clearly, plaintiffs were compelled to abandon their improvements from knowledge of a subsequent appropriation by the city. On September 17, 1896, the city, by contract with Jacob Mayer, actually entered upon the land and completed its boulevard according to the appropriation made by councils. It is not important that plaintiffs, after the practically compulsory stoppage of their own operations, on May 18, 1896, relet the railway and stone to Tobias; we mean, that it is not important as affecting this cause of action for damages; the fact may be important, as one mitigating damages in their claim, but it does not bar them from asserting a claim for damages. They might, by reason of the city improvement, have assigned the remainder of their term without compensation; may have considered it of no value. The case must be treated as if they were the lessees of Keim, and by that lease they obtained a property, which has been injured by the construction of a public improvement, as of the date of the taking of the property, which the

undisputed facts show was the date of the municipal ordinance. This is not the case of a city laying out a street and placing it on the city plan, and thereafter, by proper municipal legislation, abandoning the improvement; it is a survey, appropriation and completion of the street. If nothing further had been done than adopting a paper plot of the street, it may be, the plaintiffs would have had, under the statute, an unavailing or an inadequate remedy; but the street was more than a project; it matured into a fact, and the city cannot now place itself in the position of a municipality, which, by abandonment of its proposed improvement, only on paper, is exempt from damages for taking. By actual opening of and construction of the street, the date of taking relates back to the date of the ordinance adopting the route; this ordinance warned plaintiffs to stop their improvement; the construction of the street was the consummation of the purpose manifested by the constructive appropriation.

This is our view of the law on both questions which are so ably discussed by the learned judge of the court below. We think him mistaken as to his conclusions on both. The offers of evidence are necessarily passed on by our decision as to the law.

The judgment is reversed and a venire facias de novo awarded.