## Levy, Appellant, v. Parkway Baking Company.

Argued May 25, 1938.  Before KEPHART, C. J., SCHAF-
FER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Henry W. Balka,* with him *Solomon Freedman,* for
appellant.

*Walter B. Gibbons,* with him *Stuart L. Kirk,* for ap-
pellee.

OPINION BY MR. JUSTICE LINN, June 30, 1938:

In this appeal from judgment on a verdict directed for defendant in assumpsit for the balance of the purchase price of real estate, plaintiff states two points for review: "1. Does the Statute of Frauds," as the learned court below held, "require the authority of the agent of the purchaser of land to be in writing?" 2. Whether there was error in excluding a paragraph from the statement of claim offered by plaintiff as an admission.

Defendant, Parkway Baking Company, a corporation, was sued as undisclosed principal. Conly was its treasurer; Marian Coulter was employed by it as telephone operator. Plaintiff, Morris H. Levy, owned and wished to sell certain land and employed Lionel Friedmann & Company,[1] a real estate broker, to make the sale. In the agreement of sale "Lionel Friedmann & Co., agent for Morris H. Levy . . . agrees to sell and convey . . . to Marian Coulter, Singlewoman, who agrees to buy . . ." for $7,000. Miss Coulter signed the agreement as purchaser; $700[2] was paid down, the balance to be paid at settlement. The suit is for the $6,300 balance; such an action is one for specific performance by the vendee.

1. The Statute of Frauds. The learned court below relied on two cases containing expressions which would support the conclusion for which they were cited if they represented the law: in *Twitchell v. Philadelphia*, 33

---

[1] The evidence does not show whether this was a corporation or a party or parties trading under a fictitious name. In the agreement, settlement is provided for at the office of Lionel Friedmann, Inc., obviously a different thing.

[2] The agreement provided: "Should the buyer fail to make settlement as herein provided, the sum or sums paid on account may be retained by the seller, either on account of the purchase money, or as compensation for the damages and expenses he has been put to in this behalf, as the seller shall elect, and in the latter case, this contract with all rights and obligations shall become null and void and all copies hereof shall be returned to seller for cancellation."

Pa. 212, the expression used by READ, J., was not necessary to the decision, because the alleged agency had been taken away by the Consolidation Act of 1854; the expression by SADLER, J., in *Humphrey v. Brown,* 291 Pa. 53, 139 A. 606, also was *obiter* as appears from a subsequent statement in the opinion that the alleged agent was not agent for the purchaser. As these expressions and others of similar import are misleading, as this record shows, attention is now called to the construction of the statute that has been accepted for many years when the decision of a case turned on the point.

The Statute of Frauds requires evidence in writing by the party (or his agent with written authority) "making or creating" a fee, except[3] in cases not now material where possession and improvements take the case out of the statute. The Act of March 21, 1772, 1 Sm. L. 389, Section 1, 33 PS section 1, in which we have italicized now pertinent words, is as follows: "That from and after the tenth day of April, one thousand seven hundred and seventy-two, *all* leases, *estates, interests of freehold* or term of years, or any uncertain interest, of, in, or out of any messuages, manors, lands, tenements or hereditaments, made or created by livery and seisin only, or by parol, *and not put in writing, and signed by the parties so making or creating the same, or their agents, thereunto lawfully authorized by writing,* shall have the force and effect of leases or estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force or effect, any consideration for making any such parol leases or estates, or any former law or usage to the contrary, notwithstanding; except, nevertheless, all leases not exceeding the term of three years from the making thereof: And moreover, *that no leases, estates,* or interests, either of freehold or terms of years, or any uncertain interest, of, *in, to or out of any* messuages, manors, *lands,* tenements or

---

[3] See Restatement, Contracts, section 197 and Annotation.

hereditaments, *shall, at any* time after the said tenth day of April, one thousand seven hundred and seventy-two, *be assigned, granted or surrendered, unless it be by deed or note, in writing, signed by the party so assigning, granting or surrendering the same, or their agents, thereto lawfully authorized by writing,* or by act and operation of law."

In *Tripp v. Bishop,* 56 Pa. 424, 428 (1867), suit was brought for purchase money. STRONG, J., said: "The jury found for the plaintiff, and it must therefore be taken that these facts [which had been stated] are established. Do they show a sufficient compliance with the demands of the statute? Neither the British statute nor ours requires that the written agreement or memorandum of the sale should be signed by both parties—a receipt for the purchase-money, if it describe the lands, has been held sufficient: 9 Ves. 234; 12 Id. 466; and even a note, or a letter has more than once been held to be a sufficient agreement to take the case out of the statute: Sugden on Vend. 45.

"This is even more certain under our statute than under that of 29 Charles 2. The words of the latter are, 'unless the agreement, or some memorandum thereof shall be in writing and signed by the party to be charged therewith.' Our act declares that all leases, estates, interests of freehold, &c., shall have the force and effect of leases or estates at will only, unless put in writing and signed *by the parties so making or creating the same,* that is, the parties making the leases or creating the estate. It is then only the lessor or grantor who is required to sign the agreement. His contract must be in writing, and signed by him; but the statute requires no written evidence of the engagement of a lessee or grantee. The Statute of Frauds was passed for the protection of landowners. It was intended to guard them against perjuries in the proof of parol contracts. To secure this protection it prescribed a rule of evidence, by which alone their estates can be diverted. This is in-

timated in *Lowry v. Mehaffey,* 10 Watts 387 [1840]. There it was ruled that an agreement for the sale of land reduced to writing, and signed by the vendor alone, and delivered to the vendee, is all that the statute requires. It is true that in that case it appeared the contract had been partially executed; but not sufficiently to give effect to a parol sale. After all, it was the signature of the agreement by the vendor alone which made the sale effective. The same thing was ruled in *McFarson's Appeal,* 1 Jones 503. The case of *Wilson v. Clarke,* 1 W. & S. 554, is not in conflict with these decisions. There the contract rested entirely in parol. The vendor had signed no agreement. He could not, therefore, have been compelled to make a conveyance, and for this reason he was not allowed to enforce the contract specifically against the other party. But in the present case the vendor has made a deed for the land and signed it; he has sent it to an agent to be delivered. The vendees examined it, were satisfied with it, accepted it, and paid the hand-money to the agent. The contract was made and closed at that time. The parties then agreed that the deed should remain in the agent's hands until the time of credit expired for the remaining purchase-money, or until it should be paid. Surely it cannot be said the plaintiff was not bound by the contract then made. He could not take back his deed with the $2,500 paid him in hand. Had the defendants tendered the remaining purchase-money, a court of equity would doubtless have compelled a consummation of the contract in the delivery of the deed. The contract therefore was mutually obligatory, and evidenced by all that the Statute of Frauds requires." See also *Johnston v. Cowan,* 59 Pa. 275, 280; *Smith & Fleek's Appeal,* 69 Pa. 474, 480; *Witman v. Reading,* 191 Pa. 134, 140, 43 A. 140; *Brodhead v. Reinbold,* 200 Pa. 618, 50 A. 229; *Pbg. Mfg. Co. v. Fid. T. & T. Co.,* 207 Pa. 223, 56 A. 436; *Sutter v. Isabella Furnace Co.,* 210 Pa. 79, 59 A. 476. In *Ottman v. Nixon-Nirdlinger,* 301 Pa. 234, 151 A. 879 (1930), it

appeared that the assignee of a 99-year lease, who was acting for the defendants as undisclosed principals, had not been authorized in writing by them to take title for them. SADLER, J. (from whom the learned trial judge quoted the *dictum* relied on below) said, p. 241: "The statute of frauds has no application to the present situation, for it was only necessary that the owners of the reversion, those to be bound, should comply with its requirements to make the obligation an enforceable one."

The mere fact, then, that defendant had not in writing authorized Miss Coulter to sign the agreement to purchase, was no defense.[4]

2. Mr. Stern, employed by Friedmann & Company, testified that he had submitted the property to Mr. Conly; he also prepared the agreement, describing Lionel Friedmann & Company as plaintiff's agent, and took it to Mr. Conly and informed him "that in agreements of this nature, where the buyer had not been disclosed, it was customary to have some one who was not the actual buyer, sign the agreement." In consequence, Mr. Conly or a Mr. Lipman, employed by defendant, asked Miss Coulter to sign. Mr. Stern received from Mr. Conly a check on the Parkway Baking Company's account, drawn to the order of Lionel Friedmann & Co. for $700, by "A. R. Conly Treas. Secty." There is no evidence that Mr. Conly was authorized by the corporation to buy real estate; what he did, as stated above, is not sufficient to prove such authority; it is not suggested that defendant's business was buying and selling real estate.

For proof of Miss Coulter's authority to bind defendant, plaintiff proposed to rely on an averment in the statement of claim said to be insufficiently denied in the affidavit of defense; the learned trial judge excluded the

---

[4] See also, Restatement, Agency, section 30, and Restatement, Contracts, section 193, and Annotations to each of the sections.

offer on the ground that plaintiff's averment was insufficient to stand as an admission of her authority.[5]

Paragraph 2 of the statement of claim is in these words: "On or about July 14, 1936, defendant company instructed its agent, Lionel Friedmann & Company to enter into a written contract for the purchase of the above mentioned premises for the sum of $7,000 by Marian Coulter, agent for said defendant company, without disclosing to plaintiff that the said Marian Coulter was acting as agent for defendant company."

Paragraph 2 of the Affidavit of Defense reads: "Denied. It is denied that on or about July 14, 1936, the defendant company instructed its agent, Lionel Friedmann & Company to enter into a written contract for the purchase of premises 539 North 13th Street for the sum of $7,000 by Marian Coulter, agent for said defendant company, without disclosing to plaintiff that the said Marian Coulter was acting as agent for defendant company. On the contrary, Lionel Friedmann & Company never was or acted as agent for the defendant in the purchase of the above mentioned premises, but Lionel Friedmann & Company was the agent for the plaintiff in this case and acted as such in the sale of the property, as will particularly appear by reference to Exihibit 'A' attached to and made part of plaintiff's Statement of Claim."

The first thing to challenge attention, in the light of the evidence, is the averment in paragraph 2 that Lionel Friedmann & Company was instructed to act as defend-

---

[5] Appellant's position on this point (5th assignment) is thus stated in the brief: "All that is denied in this paragraph of the Affidavit of Defense is that Lionel Friedmann & Co. was the agent for the defendant. Everything else is admitted as being insufficiently denied. It is, therefore, submitted that the defendant admits that Marian Coulter was the agent for the defendant company in signing the written contract for the purchase of the premises in question."

ant's agent—when the agreement, on which plaintiff relies and which is part of his statement of claim, described Friedmann & Company as plaintiff's agent and showed that in executing the agreement Friedmann & Company acted for plaintiff. As phrased, it would seem to be an averment that defendant instructed its agent, Friedmann & Company, "to enter into a written contract" [on behalf of defendant] "for the purchase . . . by Marian Coulter, agent for said defendant company. . . ." The averment is defective in substance as an admission of the fact which plaintiff had to prove. Who instructed Friedmann & Company or Marian Coulter to bind the defendant? What was the instructor's relation to defendant corporation and what was his authority to instruct? "The first defense interposed to plaintiff's claim is that the instrument sued on was executed in reliance upon a contemporaneous parol contract made by plaintiff's 'real estate officers' that defendant would not be held thereon. It is a familiar rule of pleading that where a contract made by an agent is relied upon to bind his principal, the identity of the agent and his authority to act for his principal must be clearly set forth": *Germantown T. Co. v. Emhardt (No. 1)*, 321 Pa. 561, 564, 184 A. 457. See also *Lehan v. Integrity Trust Co.*, 303 Pa. 357, 361, 154 A. 596; *Kelly, Murray, Inc., v. Lansdowne Bank & Trust Co.*, 299 Pa. 236, 149 A. 190.

Defendant offered no evidence and moved for binding instructions. There was not sufficient proof to submit to the jury whether Conly or Coulter, separately or together, were authorized to bind the corporation to buy the property.

Judgment affirmed.